### OECHSNER v. FOUR BRANDS, Inc., et al.

Circuit Court, Dade County, Civil Appeal.
April 21, 1952.

Victor Levine, Miami, for appellant.

Robert F. Underwood, Knight, Smith & Underwood, Miami, for the employer and insurance carrier, appellees.

CHARLES A. CARROLL, Circuit Judge.

This cause came on to be heard on appeal from an order of the industrial commission affirming an order of a deputy commissioner. After examining the record and briefs and hear-

ing the argument of counsel I have concluded that the order is erroneous and contrary to the preponderance of the evidence, and should be reversed.

The deputy commissioner concluded, in effect, that he did not believe that an accident had happened, or that any accident such as charged had occurred which resulted in the injury complained of. His statement on this point, at the conclusion of his discussion of the evidence, follows:

> The undersigned deputy commissioner has reviewed the testimony of the several witnesses in this case, which testimony was given by the witnesses as recited at the beginning hereof, and he has visited this building and this elevator, been on it, ridden on it, and, under the circumstances, it is impossible for the undersigned deputy commissioner to see how anyone could have been hurt by this elevator the way it is controlled, counterweighted, and operated, and it is the opinion of this undersigned deputy commissioner that, if the claimant is disabled from doing her work, it certainly is not the result of any accident which she may have had on this elevator when she was operating it on November 6, 1950.

By a clear preponderance of the evidence it appears that there was an accident — in that the elevator passed below the level of the ground floor to its blocked-off stopping point somewhere below the floor level. The plaintiff testified specifically as to this occurrence. It may well be that she exaggerated the happening, and that it did not occur in just the manner that she described. It can be gathered from her testimony that the elevator acted out of the ordinary; that it did not stop where, or at a point where it should have stopped; that it went beyond the floor, and came to a halt when it contacted the brace or bottom beneath the floor.

One item which it appears the deputy commissioner overlooked, judging from his statement quoted above, was the circumstance that the maintenance man, Donald Ross, testified that some control part was in disrepair or questionable, and that the elevator could have gone on past and that the control might not have prevented it. In other words, it is clear that there was some defect which is consistent with the elevator going past the floor level and hitting the bottom — whereas ordinarily it would be automatically braked and stopped at the floor level.

The evidence of the passenger, Maria Madina, who was in the elevator, instead of detracting from the claimant's case adds to it. When she says she was not hurt, and that she was

not inconvenienced or did not notice any bad jar, that is not particularly significant, because she was standing or leaning in the corner, which would brace her. She was reading something or looking over a paper, and not paying attention to whether she was at the ground level or where she was. Therefore, when she reached the ground level she would have no reason to know or expect that the elevator would not go farther. She simply waited until it went as far as it was going, and if it hit harder than customary, it could well have done so without injuring her or throwing her off balance in the position in which she was. She says, however, that it went below the floor level and then had to be raised back to the floor level after coming to a stop. She recalled that the operator cried out or exclaimed, and looked scared, and that she became white in the face.

The elevator operator, having worked the machine repeatedly with the automatic devices functioning properly, and with every reason to believe that it would stop and not go beyond the floor level with the guidance and direction which she was giving it, very logically could have been totally unprepared for any sort of jar if the elevator should proceed some feet or even inches beyond that point, as she was geared to have it stop at the floor level. The effect on her could be the same as that on a person walking down his front steps — which he knew from habit to be a certain distance apart — who should suddenly step on one that had become defective and which was some inches away from its accustomed place. A person used to the steps could suffer a severe injury, whereas a person unaccustomed to the steps would take a look at them so that he might negotiate them without trouble, or be braced for the jolt. It simply means that the negative effect of the "accident" to the elevator on the passenger is understandable and logical, and the adverse effect of it on the operator is also logical and consistent with the circumstances.

The building manager heard the elevator hit bottom. It shook the building. It caused him to rush four flights downstairs to investigate. He noticed the operator was upset and white.

A tenant, whose place of business was in the lobby, saw the elevator go past the floor level and into the pit and come back up. He heard her exclaim about the event.

In the face of that evidence, the deputy commissioner was not justified in substituting his feeling about the matter, and

it was error for him to decide the case on the basis that he could not see how it could have happened, or that he didn't believe it happened. There is no conflict in the testimony about the accident or event. There is no evidence that this lady was not operating the elevator, or that the elevator did not act peculiarly in substantially the way claimed by her on that date.

The balance is a matter of causation with reference to her injuries, and it is noted that the deputy commissioner did not make findings indicating that if such accident occurred, the injuries would be independent of that cause.

It was uncontradicted that she had been well and able to perform regular work for years before the occurrence. The manager of the building, as her direct employer, certified to that, and that she began ailing thereafter. If she had an inherent underlying physical make-up or condition which this accident threw into a state of activity or imbalance, the result is the same.

Accordingly, the cause is reversed, and is remanded for further proceedings not inconsistent with this opinion. The attorney for the appellant is allowed $200 as counsel fees for his services on this appeal.